## The State of Louisiana *v.* John Karn.

An indictment concluding " contrary to the form of the statute in such cases made and provided " must be intended to mean the statute of *the State of Louisiana.* The criminal statutes of no other government are cognizable, properly speaking, by our courts.
An error in spelling the word " foreman " "*fourman* " is not important, as the pronunciation of the same is not thereby changed—.*Idem sonans.*

APPEAL from the District Court of the Parish of East Feliciana, *McVea*, J.
W. J. Hamilton and D. B. Sanford, for appellant. W. S. Vaughan, District Attorney, for the State.

Merrick, C. J. The defendant having been tried and convicted of the offence of selling spirituous and intoxicating liquor to a slave without the written consent of the owner, appeals from the judgment imposing a fine of $301, and one month's imprisonment.

The bill of exception to the refusal of the Judge to continue the cause on ac-

STATE
v.
KARN.

count of the absence of a witness, cannot be examined by us, as it rests upon a fact found by the District Judge against the accused.

The indictment charges that the defendant on &c., at &c., " a certain quantity of spirituous and intoxicating liquor did sell to a certain slave named *Ben*, without having any written permission from the owner or employer of said slave for so doing, contrary to the form of the statute in such case made and provided, and in contempt of the authority of the State, and against the peace and dignity of the same."

The indorsement of the finding of the Grand Jury is as follows : " A true bill, *Richard Draher, fourman.*"

The appellant makes through counsel the following points, viz :

1st. The indictment is defective because it does not conclude against the statute *of the State of Louisiana*, and because the offence is not charged in the words of the statute (viz.) that said spirituous liquor was sold " *without the consent in writing* of the owner," &c.

2d. The Act of 19th March 1857, entitled, " An Act to prevent the buying from, selling or giving to slaves without the consent in writing of their owner or employer," is unconstitutional in this : It has more than one.object, and the different objects are not embraced in the title ; it defines the offence ; it denounces the penalty ; it disposes of the fine ; it prescribes the form of the indictment ; it establishes a new rule of evidence ; it declares what proof shall be sufficient, and what shall be a valid plea.

3d. The bill of exception shows that the State failed to show that the selling charged in the indictment was done without the consent in writing of the owner, overseer or employer of said slave.

I. The indictment appears to us to be sufficient. The conclusion " contrary to the form of the statute in such case made and provided " must be intended to mean the *statute of the State of Louisiana*. The criminal statutes of no other government are cognizable, properly speaking, by our courts.

The term " without the written permission of the owner," &c., seems to us to be synonymous with the term " without the consent in writing of the owner," &c. The owner could not give his written permission, without giving his consent in writing, neither could he give his consent in writing without giving his written permission. The terms appear to be convertible in relation to the subject matter, and we think the offence is sufficiently charged under the statute. See 1 Chitty, Crim. Law, 281. *State* v. *Smith*, 5 An. 341 ; *State* v. *Hood*, 6 An. 180. The error in spelling the word foreman is not important, as the pronunciation of the same is not thereby changed.

II. On the question of the constitutionality of the act of the 19th March 1857, we have to say that the object of the act is to prevent the dealing or trafficting with slaves without the consent of the owner or employer in writing. All the different sections of the statute tend to the same end, and hence the general scope of the various enactments is embraced in the title. Under the authority of the case of the *State* v. *Henry*, a slave, 15 An. 297, we cannot say that the act in question is unconstitutional.

Counsel ask whether the disposition of the fine, or the holding A responsible for the misdemeanors of B, have the effect of preventing the trafficking with slaves ? We can answer that it seems to us that these provisions were intended by the Legislature to have that effect. One half of the fine is given to the informer to induce vigilance in the prosecution of this dangerous class of offences.

If the owner is made responsible for the act of his employee, it is to make him careful in the selection of his agents, and watchful to prevent a violation of the law.

III. We concur with our learned brother of the District Bench that the statute imposes upon the defendant the burden of showing that he had the owner's consent in writing.

It was enough for the State to prove that the defendant sold the spirituous liquor to the slave. This proof made out a case *prima 'facie* against the defendant, and it was for him to rebut the presumption arising from the facts by the production of the consent in writing of the owner or employer, or the proof of its loss.

Judgment affirmed.